**FILED**

JUN 2 5 2010

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

|  |  |  |
|---|---|---|
| NICOLE SHIFFRAR, | ) | Civil No. *10-5048* |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | COMPLAINT |
|  | ) |  |
| CITY OF BELLE FOURCHE, DAVE | ) |  |
| SCHNEIDER, THOMAS MAUNDERS, | ) |  |
| and JUSTIN SHELLHAMMER, | ) |  |
| , | ) |  |
|  | ) |  |
| Defendants. | ) |  |

Plaintiff brings this action for damages and other legal and equitable relief from

Defendants' and states the following as her claims against the Defendants:

### JURISDICTION AND VENUE

1.      The matters alleged within this Complaint were committed in Butte County in the

Western Division of South Dakota.

2.      Plaintiff Nicole Shiffrar, a female former employee of Defendant City of Belle

Fourche, within the Belle Fourche Police Department, brings this action under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §1983, and state common law to redress the wrongs done to

her by City in discharging Plaintiff after she reported sexual harassment by a co-worker and

participated in the investigation by City and  reported safety violations.

3.      On or about November 3, 2009, Plaintiff timely submitted a Charge of

Discrimination against City with the South Dakota Division of Human Rights, which charge was

dually filed with the U.S. Equal Employment Opportunity Commission (hereafter referred to as

"EEOC").

4.      The Division of Human Rights found there was probable cause to believe discrimination had occurred on April 12, 2010.

5.      A Notice of Right to Sue was issued by the EEOC on June 18, 2010.  A copy of this Notice is attached hereto as Exhibit "A" and incorporated herein by reference.  The Division administratively closed its matter on June 4, 2010, and Defendant City elected to proceed in court pursuant to S.D.C.L. ch. 20-13.

6.      Plaintiff exhausted her administrative remedies under S.D.C.L. ch. 3-18.

7.      Plaintiff has complied with all conditions precedent to this suit by giving timely notice to Defendant City of potential claims pursuant to S.D.C.L. §§ 3-21-2 and 3-21-3.  Ninety days have elapsed since the notice was served.

8.      Jurisdiction is conferred on this Court by 42 U.S.C. §§ 2000e and 1983, and by 28 U.S.C. § 1343.  This Court has supplemental jurisdiction under the provisions of 28 U.S.C. §1367.

9.      Venue for all causes of action stated herein lies in the Western Division of the District of South Dakota as the acts alleged as a basis for Plaintiff's claims took place within the boundaries of that District.

## PARTIES

10.      Plaintiff is an individual and at all times pertinent was a resident of Butte County, South Dakota.

11.      Defendant City is a municipal corporation acting, and authorized to act in such capacity, under the laws of the State of South Dakota.  Defendant City has a Common Council, who, along with the Mayor, serves as the decision-making body and authority for Defendant City as to all issues including, but not limited to, policy, procedure, the establishment of ordinances, laws and municipal codes, employment matters involving city employees and all other matters

2

necessary to the establishment and administration of municipal business for the health, welfare, benefit and safety of its citizens.

12.     Defendant Schneider is a resident of Butte County.  Defendant Schneider was also the Mayor of the City of Belle Fourche at the time of Plaintiff's termination and possessed final policy making authority.

13.     Defendant Maunders is a resident of Butte County and was also Chief of Police for the City of Belle Fourche, and a co-worker of Plaintiff.

14.     Defendant Shellhammer is a resident of Butte County and was a certified police officer for the City of Belle Fourche, and a co-worker of Plaintiff.

15.     Plaintiff's allegations, as contained within this Complaint, are asserted against Schneider as an individual and in his former capacity as Mayor of Defendant City, and against both Maunders and Shellhammer as individuals.

## GENERAL ALLEGATIONS FOR ALL COUNTS

16.     Plaintiff was employed by City as the police secretary for the police department.

17.     In July of 2008, Plaintiff was in her personal vehicle in the parking lot of the police department.  As Plaintiff left work, she observed Defendant Shellhammer lower his trousers and underwear, bend over and display his buttocks and move his body in such a fashion that his genitals were exposed.  Plaintiff turned her vehicle lights off immediately.  When she illuminated them, he repeated the activity.

18.     Defendant Shellhammer's actions were witnessed by another police officer who did not report the activity.

19.     Plaintiff was afraid to report Shellhammer's actions because of his close personal relationship with Defendant Maunders, then chief of police for Defendant City, and her knowledge

3

of retaliatory actions taken against others who spoke up about inappropriate behavior.

20.     In December of 2008, a City Council member questioned Plaintiff about Shellhammer's actions.

21.     On or about January 21, 2009, Plaintiff advised Lt. Erik Jorgensen that she was surprised Shellhammer was being touted as a possible sergeant candidate because of his behavior. She described Shellhammer's actions to Jorgensen.

22.     Lt. Jorgensen asked Plaintiff to report Shellhammer's actions to the chief of police pursuant to city policy.  Plaintiff did so.

23.     On or about January 26, 2009, the chief of police directed Lt. Jorgensen to investigate the matter.

24.     Besides the sexually harassing nature of Shellhammer's actions, they were also a violation of S.D.C.L. §§ 22-24-1.1, -1.2, and -1.4 and S.D.C.L. § 9-14-37, and represented inappropriate off-duty conduct and conduct unbecoming a police officer.

25.     Following the investigation by Lt. Jorgensen, Maunders gave Shellhammer a warning, and placed him on probation for 90 days and directed him to complete harassment training.

26.     Defendant Maunders informed Plaintiff of Shellhammer's disciplinary action on February 2, 2009.

27.     During Plaintiff's employment, she raised concerns about the asbestos dust that was in the air from the removal of asbestos tiles by city employees and the Mayor.

28.     Following the probationary period, Shellhammer was promoted to corporal.

29.     Shellhammer was unhappy about his discipline.

30.     Shellhammer began making threats that he would see that whoever reported him

4

would be fired.  He approached Plaintiff directly and threatened her as late as July of 2009.

31.    Plaintiff telephonically reported the threat to Lt. Jorgensen, who was out of town.

32.    On July 28, 2009, Defendant Maunders hand-delivered a written Notice of Suspension and Recommended Termination to Plaintiff alleging violations of city policy, poor performance and neglect of duty.

33.    The Notice of Termination included purported violations of policies that had not yet been adopted or were not part of city policies.  It also accused Plaintiff of actions she had not taken.

34.    Up to that date, Plaintiff had received no disciplinary actions of any type during her tenure as a city employee.

35.    The officer who was present during the Shellhammer incident did not report it contrary to policy.  He received no discipline whatsoever.

36.    The Standard Operating Procedures of the Belle Fourche Police Department applied to Plaintiff as a civilian employee.

37.    The Standard Operating Procedures (SOP) of the police department are stricter than the general city personnel policies.

38.    Within the SOP are three types of punitive disciplinary action:  reprimand, suspension, and discharge for cause.

39.    The SOP provide that the Common Council may discharge any member of the police department for cause.

40.    Plaintiff was not terminated for cause.

41.    Plaintiff filed a grievance on August 1, 2009.  Plaintiff had been advised that she did not need to attend the City Council meeting on August 3 as no decision would be made.

42.     The City Council voted to terminate Plaintiff on August 3, 2009, following Defendant Maunders' appearance at a City Council meeting.

43.     Following her termination, Plaintiff continued the grievance process during which testimony was taken at two hearings.

44.     Defendant Maunders admitted during the hearing that he had no documentation of any type in Plaintiff's file prior to her notice of termination.

45.     During the grievance hearing, a City Council member noted that Defendant Maunders' reasons for seeking Plaintiff's discharge had changed and questioned whether the actions of Defendant Maunders were a form of retaliation because of the sequence of events.

46.     During the grievance hearing Defendant Schneider left his neutral role and became an advocate for Defendant Maunders and Defendant City.

47.     Defendant Schneider's actions allowed him to become impermissibly involved as an advocate and he became an adversary with a will to win.

48.     The City Council never voted on the issue of whether Plaintiff could be reinstated in her job.

49.     Prior to the completion of the grievance process, Defendant City began advertising for a new police secretary.

50.     The City Council, at the Mayor's behest, authorized payment of Maunders' legal fees, but did not make the same offer for Plaintiff.

51.     Plaintiff complained to the State regarding improper asbestos removal following her notice of termination, but prior to termination.

52.     The Mayor expressed his displeasure about reports of asbestos removal to the State during the grievance hearing.

## COUNT ONE
### (By Plaintiff against Defendant City of Belle Fourche)
### RETALIATION PURSUANT TO 42 U.S.C. § 2000e-3(a)

53.     As a direct result of Plaintiff's engaging in a federally-protected right to oppose practices that she reasonably believed constituted violations of Title VII and/or because Plaintiff made a charge, assisted or participated in an investigation of sexual harassment at City of Belle Fourche Police Department, Plaintiff was terminated from employment of Defendant City in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

54.     Plaintiff's punishment for claimed employment failings was grossly disparate from those of other employees who had violated policies.  The City treated other employees with policy violations less severely than Plaintiff.

55.     Following the protected activity, Defendant Maunders created reasons to terminate Plaintiff.

56.     As a direct and proximate result of Defendant City's wrongful and retaliatory discharge in violation of federal law, Plaintiff has suffered and sustained lost wages, lost employment-related benefits, and a diminishment in future earning capacity, damage to her personal and professional reputation, embarrassment, humiliation and emotional distress, and mental anguish.

57.     The unlawful employment practices of Defendant City complained of above were intentional.

58.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Plaintiff.

## COUNT TWO
### (By Plaintiff against all Defendants)
### RETALIATION PURSUANT TO SOUTH DAKOTA HUMAN RELATIONS ACT

59.     Through the actions of Maunders, Shellhammer, Schneider, and the other agents of City of Belle Fourche, Defendants engaged in unlawful discrimination, including reprisals, against Plaintiff because of her complaints of what she reasonably believed was discriminatory behavior and or her assistance in the observance, investigation, and support of the purposes and provisions of the South Dakota Human Relations Act.

60.     The policies of Defendant City provide that there shall be no retaliation against any employee for filing a harassment complaint or assisting, testifying, or participating in the investigation of such a complaint.

61.     Defendants violated City and Department policies.

62.     The unlawful practices by Defendants complained of above were intentional and done with malice or with reckless indifference to the legally protected rights of the Plaintiff.

63.     As a direct and proximate result of Defendant City's wrongful and retaliatory discharge in direct violation of public policy, Plaintiff has suffered and sustained lost wages, lost employment-related benefits, and a diminishment in future earning capacity, damage to her personal and professional reputation, embarrassment, humiliation and emotional distress, and mental anguish.

## COUNT THREE
### (By Plaintiff against all Defendants)
### SECTION 1983 CIVIL RIGHTS ACTION

64.     Plaintiff's participation in the investigation of sexual harassment and criminal conduct by another employee and report of improper asbestos removal were an exercise of fundamental rights protected by the First Amendment of the Constitution of the United States of

8

America, as well as Article VI, Sections 4 and 5 of the Constitution of the State of South Dakota. Plaintiff's actions are firmly embedded within the fundamental concepts of freedom of speech, redress of grievance and peaceable assembly.

65.    Defendants Schneider's, Maunders', Shellhammer's and City's interests in orchestrating and insuring effective and efficient government were unaffected by Plaintiff's conduct and activities, and if affected at all, were clearly outweighed by Plaintiff's interests in exercising her constitutional and statutory rights of free speech, to peaceably assemble and to consult for the common good and make known her opinions.

66.    A substantial and/or motivating factor in Defendant Maunders' recommendation for Plaintiff's termination, and subsequent termination by Defendant City and Defendant Schneider, was her participation in the investigation of the sexual harassment and the criminal activity of her co-worker, and removal of asbestos, though potentially adverse to Defendants' interests, but of public interest to the citizens.

67.    The matters relating to the conduct of City government, the actions of the chief of police, police officers, the asbestos removal, and grievance hearings were a matter of public interest and intense media scrutiny.

68.    Plaintiff's rights of free speech were well established at the time of her wrongful termination.

69.    Plaintiff's rights of free speech were made not as an employee but as a private citizen.

70.    Defendants' actions in terminating Plaintiff were done under color of law and are likely to have a chilling effect on all other employees and citizens who might find themselves similarly situated.  In addition, Plaintiff raised issues of public significance that would have been

9

curtailed if fear of retaliation had caused her to continue to refrain from participating in the investigation of the sexual harassment, reporting of asbestos removal, and the criminal activity of her co-worker.  It could similarly have discouraged other employees from engaging in similar speech.

71.     As a direct and proximate result of the deliberate indifference, conscious disregard and unlawful conduct undertaken in breach of Defendants City's, Maunders', Shellhammer's and Schneider's affirmative obligations and duties to recognize Plaintiff's fundamental First Amendment rights, Plaintiff has suffered and sustained lost income, lost employment-related benefits, a diminishment in future earning capacity, damaged personal and professional reputation, embarrassment, humiliation, emotional distress and mental anguish.

72.     Such deliberate indifference, conscious disregard and all actions, conduct, errors and omissions complained of herein on the part of Defendants City, Maunders, Shellhammer and Schneider, individually and in their official capacity, jointly and severally, have violated Plaintiff's constitutionally protected First Amendment rights for which said violations are actionable under and pursuant to 42 U.S.C. § 1983.

**COUNT FOUR**
**(By Plaintiff against City)**
**WRONGFUL DISCHARGE - PUBLIC POLICY**

73.     In addition to the public policy set forth in the United States Constitution, the public policy of this State is embedded in the South Dakota Constitution, and in particular, in Article VI, freedom of speech, redress of grievances, peaceable assembly, communicate opinions on any matters related to the conditions of public employment, duty to report hazards in the workplace found in South Dakota statutes, and anti-retaliation provisions found in state and federal law and Defendant City's policies.

74.     South Dakota law requires municipalities to have a grievance procedure for its employees. S.D.C.L. § 3-18-15.1.  South Dakota law further provides that public employees' rights to express or communicate a view, grievance, complaint or opinion on any matter related to the conditions of public employment may not be limited or impaired if they do not interfere with the full and faithful performance of the duties of employment.  S.D.C.L. § 3-18.15.1.

75.     Employees who enforce the statutes are entitled to costs, expenses and attorney fees.  S.D.C.L. § 3-18-10.

76.     Defendant City personnel policies provide employees are expected to make their unease and/or disapproval directly and immediately known to the harasser.  Belle Fourche Personnel Policy 2.5.3.A.

77.     Plaintiff alleges that the decision of Defendant City and Defendant Maunders to recommend to City Council and Defendant Schneider to terminate her position of employment was illegal and orchestrated in direct retaliation for her actions in participating in the investigatory process and making her opinion known regarding the actions of Defendants Shellhammer and Maunders, conditions of employment, and the improper removal of asbestos.  Plaintiff's actions were an exercise of free speech, redress of grievance, peaceable assembly, and participating in a grievance proceeding contemplated by South Dakota statutes.

78.     Such actions undertaken on the part of Defendant City constitute a wrongful discharge which is in violation of substantial public policies of this state.

79.     As a direct and proximate result of Defendant City's wrongful and retaliatory discharge in direct violation of public policy, Plaintiff has suffered and sustained lost wages, lost employment-related benefits, and a diminishment in future earning capacity, damage to her personal and professional reputation, embarrassment, humiliation and emotional distress, and

mental anguish.

## COUNT FIVE
### (By Plaintiff against City)
## DEPRIVATION OF PROPERTY PURSUANT TO 42 USC §1983 and STATE LAW

80.     Plaintiff was a civilian member of the Belle Fourche Police Department, and was bound by the Standard Operating Procedures of the City of Belle Fourche and could be only terminated for cause.

81.     The mandatory language in the Standard Operating Procedures provides for a for-cause termination for members of the police department and the Standard Operating Procedures created an express or implied contract of employment.

82.     Defendant City terminated Plaintiff in violation of the specific procedures and reasons set forth in the Standard Operating Procedures.

83.     Plaintiff had a property interest in her job because of the for cause only provisions.

84.     Plaintiff exhausted her administrative remedies by pursuing the City's grievance procedure.

85.     Plaintiff was deprived of her property interest in her job by Defendants who acted under color of state law.

86.     As a direct and proximate result of Defendant City's wrongful discharge in direct violation of the Standard Operating Procedures, Plaintiff has suffered and sustained lost wages, lost employment-related benefits, and a diminishment in future earning capacity, damage to her personal and professional reputation.

## COUNT SIX
**(By Plaintiff against Defendants Maunders and Shellhammer)**
## CIVIL CONSPIRACY

87.     Defendants Maunders and Shellhammer agreed and conspired to see that Plaintiff

was terminated from her employment.

88.     Defendant Shellhammer's actions against Plaintiff, by exposing himself in public,

committing criminal acts, harassing her, and threatening her job joined with Defendant Maunders'

actions to create false reasons for Plaintiff's termination.

89.     Defendants Shellhammer and Maunders conspired to tell the City Council that

Shellhammer would leave his employment if Plaintiff was not terminated.

90.     Defendant Maunders' testimony during the grievance process was not truthful and

designed to cast Plaintiff in a false light.

91.     Defendant Shellhammer's actions were designed to frighten Plaintiff and put her

in imminent fear.

92.     Plaintiff was damaged in her reputation, economically and emotionally, by the

actions of Shellhammer and Maunders.

93.     As a direct and proximate result of Defendant Maunders' and Shellhammer's

actions, Plaintiff has suffered and sustained lost wages, lost employment-related benefits, and a

diminishment in future earning capacity, damage to her personal and professional reputation,

embarrassment, humiliation and emotional distress, and mental anguish.

## COUNT SEVEN
**(By Plaintiff against Defendants Maunders and Shellhammer)**
## INFLICTION OF EMOTIONAL DISTRESS

94.     Defendant Shellhammer's action in directly threatening Plaintiff and his violation

of state law in exposing himself were extreme and outrageous, and designed to cause Plaintiff

13

severe emotional distress.

95.     Defendant Maunders' actions in recommending Plaintiff's termination and
Defendant Shellhammer's actions were done to cause Plaintiff severe emotional distress.

96.     Defendant Shellhammer's and Defendant Maunders' actions were a cause-in-fact
of Plaintiff's distress.

97.     Defendants Shellhammer and Maunders knew or should have known that their
actions would be a foreseeable result of their conduct.

98.     As the result of Defendants Maunders' and Shellhammer's negligent and
intentional actions, Plaintiff suffered emotional distress.

**COUNT EIGHT**
**(By Plaintiff against Maunders and Shellhammer)**
**INTERFERENCE IN BUSINESS RELATIONSHIP**

99.     Plaintiff held a valid business relationship through her employment with the City
as a police secretary.

100.    Defendants Shellhammer and Maunders knew of her employment.

101.    Defendants Shellhammer and Maunders engaged in intentional and unjustified
acts of interference as alleged above.

102.    Defendant Shellhammer's and Maunders' actions resulted in Plaintiff's loss of her
job.

103.    Defendants Shellhammer's and Maunders' conduct was improper and society has
a significant interest in protecting the employment relationship and the right of citizens of South
Dakota to report illegal, unsafe, and improper conduct.

104.    As a direct and proximate result of the improper conduct against Plaintiff by
Defendants Shellhammer and Maunders, Plaintiff has suffered and sustained lost income, lost

14

employment-related benefits, a diminishment in future earning capacity, damaged personal and

professional reputation, embarrassment, humiliation, emotional distress and mental anguish.

## DEMAND FOR JURY TRIAL

105.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby

requests trial by jury of the issues of fact in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.  For compensatory damages arising from any past, present and future loss of income,
    including loss of benefits, loss of career development, loss of future earning capacity,
    humiliation, past and future medical expense, embarrassment, mental anguish and loss
    of enjoyment of life, in an amount to be determined at trial.

B.  For punitive damages for the willful and wanton injury to Plaintiff as a result of
    Defendants' conduct toward Plaintiff as alleged herein, in an amount to be determined
    at trial;

C.  For attorney fees, costs, interest, and disbursements incurred herein as allowed by law;
    and

D.  For such other and further relief as the court deems just and equitable.

Dated this __25__ day of June, 2010.

LYNN, JACKSON, SHULTZ & LEBRUN, P.C.

By: _____
    Jane Wipf Pfeifle
    Attorneys for Plaintiff
    P.O. Box 8250
    Rapid City, SD  57709
    605-342-2592
    jpfeifle@lynnjackson.com

15